**Karen BOXER, Plaintiff,**

v.

**Manuel GOTTLIEB, Renault U.S.A., Inc. and Renault S.V.S.E., Defendants.**

**No. 83 Civ. 3375 (MGC).**

United States District Court, S.D. New York.

Jan. 15, 1987.

Gair, Gair & Conason by Candice Singer Ram, New York City, for plaintiff.

Byrnes & Sullivan by Maureen Sullivan, New York City, for defendant Gottlieb.

Alexander, Ash, Schwartz & Cohen, P.C. by Christopher P. Di Giulio, New York City, for defendant Renault U.S.A., Inc.

Sullivan & Cromwell by Hyman L. Schaffer, New York City, for defendant Renault S.V.S.E.

## OPINION

CEDARBAUM, District Judge.

Defendants Renault U.S.A., Inc. ("Renault U.S.A.") and Renault Service Ventes Speciales Exportation ("Renault S.V.S.E.") have moved for summary judgment dismissing the complaint. The motions are opposed by plaintiff Karen Boxer ("Boxer") and defendant Manuel Gottlieb ("Gottlieb"). The issue on these motions is whether the New York "guest motorist" statute, Section 388 of the New York Vehicle and Traffic Law, applies to an automobile accident in France caused by the negligence of the driver of an automobile that was rented only for delivery, use and operation in France.

In August 1983, while vacationing in France, plaintiff was injured in a single car accident. She was a passenger in a car driven by Gottlieb. The driver lost control, and the vehicle went off the road and ran into a stone wall. Plaintiff sued Gottlieb, as the driver, and Renault U.S.A. and Renault S.V.S.E. as the owners of the car, to recover for injuries she sustained from the accident. Her only claim is negligence; she makes no claim of breach of warranty or defective equipment. Plaintiff sues the Renault defendants under a theory of vicarious liability.

In support of its motion for summary judgment, Renault S.V.S.E. urges that French law applies and that, under French law, in the absence of an employment or agency relationship, automobile owners are not vicariously liable for accidents caused by a third party's negligent operation, even if the driver is operating the car with the owner's permission. Renault S.V.S.E. also argues that even if New York law were to be applied, it cannot be liable because the plaintiff herself, not Renault S.V.S.E., was the owner of the car.

Renault U.S.A. makes essentially the same arguments as Renault S.V.S.E. First, that French law applies, and would impose no liability upon Renault U.S.A. Secondly, even under New York law, that Renault U.S.A. cannot be liable because it has never owned the vehicle involved in the accident.

For the reasons set forth below, I find that French law applies to determine the liability of both Renault S.V.S.E. and Renault U.S.A. and that as a matter of law, neither is vicariously liable for plaintiff's injuries. Therefore, I grant the motions for summary judgment dismissing the complaint as against Renault S.V.S.E. and Renault U.S.A.

### Background

1. *The Parties*

Plaintiff is a United States citizen and a resident of the State of New York. Defendant Gottlieb is also a United States citizen and a resident of the State of New York.

Defendant Renault U.S.A. is a corporation organized under the laws of the State of New York. Plaintiff alleges, and Renault U.S.A. has not disputed, that Renault U.S.A. is a wholly owned subsidiary of Renault France.

According to the affidavit of Louis Costet, General Counsel to Regie Nationale des Usines France ("Renault France"), defendant Renault S.V.S.E. is the office of Renault France which handles requests for tax-free sales and deliveries of Renault vehicles intended for export. It is neither a separate corporation nor even a division of Renault France. Renault France was created by governmental "ordonnance" on January 16, 1945 as an "establishment" of the French government. According to Costet, "establishment" indicates that it is owned and controlled by the state. The Republic of France directly holds 95% of the equity of Renault France; the other 5%

is held by present and former employees of the company.

Foremost Eurocar Corporation ("Foremost"), although not a defendant in this action, is a corporation organized under the laws of California.

## 2. *The Facts*

Plaintiff was interested in procuring a car for use during her vacation in France. She called the French Tourist Agency for assistance and was given the names of Renault New Jersey and Foremost in California. Foremost acts as an agent for Renault U.S.A. and arranges for rentals and sales of Renault automobiles for vacations in Europe. Plaintiff called Foremost because she had an "800" number for the company. She also requested information regarding prices and the types of automobiles available. Plaintiff placed a second call to Foremost and, according to the plaintiff's version of the facts, arranged to rent, for a three-week period, a Renault to be picked up and returned in Paris. Foremost took Boxer's order, transmitted it to Renault U.S.A. which, in turn, telexed the order to Renault France. On August 4, 1979, Boxer sent a letter to Foremost enclosing a check for $595.25 "to cover the rental of a Renault ... It is my understanding that your fee includes complete insurance coverage."

Plaintiff claims she received only two one-page documents from Foremost which confirmed her lease of the Renault. The order application (one of the documents) shows that the place of delivery and return of the vehicle was Paris, and that the period of the lease was three weeks. Plaintiff claims that she received no further documents from Renault U.S.A., or anyone else with respect to a financed purchase-repurchase plan. When plaintiff arrived in Paris to pick up the car, she signed other papers which she claims were in French and were not explained to her. One of the papers she signed was a promissory note for 20,591 French francs, payable to the order of Renault S.V.S.E. On August 18, 1979, plaintiff took possession of a new Renault-manufactured vehicle bearing license number 902 TTB92.

The ownership of the automobile is a sharply disputed issue. Plaintiff contends that she merely rented the car for a 22–day period, and had no intention of buying it. She paid $595, as a "rental fee" before leaving the United States, claims to have signed no purchase-repurchase agreement, and contends that the promissory note she signed in Paris prior to taking possession of the car was not intended as the balance of the purchase price. Defendants claim that the agreement was a purchase-repurchase agreement and that plaintiff became the owner of the car when she signed the promissory note. The car was registered with the French police in plaintiff's name.

Renault France applied for, obtained and paid for the insurance policy for the automobile. It obtained the insurance from Le Secours, a French insurance company. Coverage extended only to use in France. The car was registered in France in Boxer's name, listing her New York address. In its answers to plaintiff's interrogatories, Renault France stated that the registration was "a temporary authorization to use a tax-free vehicle." The registration was filed by Renault France in Boxer's behalf. Plaintiff received the registration certificate and the "insurance passport" for the car on August 18, 1979, when she took possession of the car. No other registration documents or papers that would indicate ownership have been introduced by any of the parties.

The accident that caused Boxer's injuries occurred on August 24, 1979 in France. At the time of the accident, Gottlieb, who had accompanied Boxer to France, was driving the car, with plaintiff's permission. The parties do not dispute that the accident occurred as a result of Gottlieb's negligence.

## Discussion

### 1. *The Applicable Law*

Plaintiff originally filed this action in New York Supreme Court. Renault

France removed it, pursuant to 28 U.S.C. § 1441(d), which provides, in pertinent part:

Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury....

Section 1441 was amended and subsection (d) was added in 1976 as part of the enactment of the Foreign Sovereign Immunities Act of 1976 ("the Act"), 28 U.S.C. § 1602 *et seq.* (1976).

■ A suit against a foreign sovereign is a suit "between a State, or the Citizens thereof, and foreign States" U.S. Const., art. III § 2, cl. 1, and comes within the judicial power of the federal courts by way of the constitutional grant of diversity jurisdiction. *See Texas Trading & Milling Corp. v. Fed. Republic of Nigeria,* 647 F.2d 300 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). The Act was not intended to create a new federal cause of action; instead it provides access to the federal courts for the resolution of ordinary legal disputes involving a foreign sovereign. The House Report on the Act states: "The Bill is not intended to affect the substantive law of liability." H.Rep.U.S.Code Cong. & Admin. News 1976, pp. 6604, 6610, as quoted in *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320, 326 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). *Verlinden* also quotes the 1973 Hearings as evidence that the Act was not intended to create any substantive right:

That is "whether state or federal law is to be applied will depend on the nature of the issue before the court," not the presence of a foreign state. "Under the *Erie* doctrine state substantive law, including choice of law rules, will be applied if the issue before the court is non-federal." *1973 Hearings* at 47 (Dep't of State, Section-by-Section Analysis of 173 bill). *Accord, House Report* at 6621.

*Id.* at 326, n. 19. In fact, under Section 1606 of the Act, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 1606.

Accordingly, in this diversity case, I must look to New York's choice of law rules to determine what law governs the liability of Renault France and Renault U.S.A. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's choice of law rules, my first inquiry is whether there is a conflict between the law of New York and the law of France.

### A. New York Law

Section 388 of the New York Vehicle and Traffic Law provides in relevant part:

1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

The vicarious liability created by this statute is in derogation of the common law. *See Caldararo v. Au,* 570 F.Supp. 39, 41 (S.D.N.Y.1983); *Plath v. Justus,* 28 N.Y.2d 16, 319 N.Y.S.2d 433, 268 N.E.2d 117 (1971).

■ Decisions interpreting Section 388 have held that it is not necessarily limited to accidents occurring within New York's borders. *See, e.g., Matter of Sentry Insurance Co.,* 36 N.Y.2d 291, 367 N.Y.S.2d 480, 327 N.E.2d 635 (1975); *Cunningham v. McNair,* 48 A.D.2d 546, 370 N.Y.S.2d 577 (1st Dep't 1975); (applying New York law to an accident in Maryland); *White v. Smith,* 398 F.Supp. 130 (D.N.J.1975) (applying New York law to an accident in New Jersey).

In *Johnson v. Hertz Corp.,* 315 F.Supp. 302 (S.D.N.Y.1970), the court noted:

Section 388 of the Vehicle and Traffic Law has been interpreted by the New

York courts to express "the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant" (citation omitted). It has also been ruled that when an analysis of the interests of competing jurisdictions indicates that New York has the predominant interest in the issue being litigated, this section of the Vehicle and Traffic Law will be applied to accidents which take place outside New York (citation omitted).

*Id.* at 304.

Thus, New York's interests in applying its law are both to protect innocent victims of automobile accidents and to ensure that a New York automobile owner is fully responsible for injuries caused by the owner's automobile, even if someone other than the owner is driving.

### B. *French Law*

Under Rule 44.1 of the Federal Rules of Civil Procedure, the determination of foreign law is a matter for the court and in making that determination, I may consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Since plaintiff has not provided the court with any authority contrary to that which Renault France submitted on the law of France, I assume that plaintiff agrees with the authority Renault France has submitted, including governing code sections and the decisions of French courts interpreting those sections.

According to the Declaration of Jean Herbaut, French law does not impose liability on the basis of ownership. Article 1384 of the Civil Code, which is the applicable statute, provides in pertinent part:

A person is responsible not only for the damage which he causes owing to his own act, but also for that which is caused by the acts of persons for whom he is

answerable or by things which are in his custody.[1]

Herbaut, who is an attorney and a member of the bar of Paris, France, represents that, under French law, the "custodian," if he has taken over control from the owner, is the individual who has the responsibility for the object in question. Liability attaches to the *garde*, rather than to the object itself. The definition of *garde* is connected with "l'usage, la direction et le controle de la chose." *Connot c. Franck*, 2 dec. 1941, D.C.1942, 25. See discussion in F.H. Lawson & B.S. Markesinis, Tortious Liability for unintentional harm in the Common law and the Civil law, Vol. 1, pp. 142–178 (1982).

When the object in question is an automobile, the owner can be held liable when he has retained some degree of control over the automobile. For example, in *France c. Union des Assurances*, 17 dec. 1984, Cass. 2° civ., the owner was held liable for injuries from an accident where the owner's son had turned over driving to another, but remained in the front passenger seat. The court ruled that since the son could have resumed control at any time, custody had never been surrendered. And in 22 juin 1943 d.c. 1947, 145, the *Cour de Cassation* ("Court of Cassation") held that the owner retained custody and was liable for an accident caused by a mechanic who was driving the car, on the ground that the owner was in the car seated next to the mechanic, and had established the route to be followed and the time of departure. The court reasoned that the owner remained the sole master of the vehicle, regardless of the mechanic's reckless driving of the car, and could have directed the mechanic at any time.

When the object is a rental car, the individual renting the car, and not the car's owner, is considered the "garde" or custodian. (See p. 9 of Herbaut declaration and cases of the Court of Cassation attached as

---

1. This is a translation from the French which provides as follows:

On est responsable non seulement du dommage que l'on cause par son propre fait, mais encore de celui qui est cause par le fait des personnes dont on doit repondre, ou des choses que l'on a sous sa garde.

Exs. H–M). In *Bouchaid ben Ahmed ben Said v. Schneider*, the Court of Cassation considered whether Bouchaid, the owner of a vehicle, was to be presumed liable for injuries suffered by Schneider in an accident in Bouchaid's car that had been rented to a third party, Lugassy. The lower court had imposed liability on Bouchaid. The court stated:

Whereas as a result of the rental contract, the custody of the vehicle had been transferred to Lugassy, who had the use, direction, and control thereof, and whereas the defect in the thing rented could not create a presumption of liability on the part of Bouchaid, the presumption applying to Lugassy alone in his character as custodian;

—It follows from this that the opinion appealed from violated the above-mentioned law.

A non-driver owner would be held liable under French law in cases in which an agency or employment relationship exists between the driver and the owner, and in which the owner is in the car at the time of the accident. The presumption of responsibility in favor of the guardian was created on the ground that the guardian is in a better position than the dispossessed owner to discover any defect in the object or control the object which may cause damage. Thus, the French policy appears to be not only to ensure swift compensation of victims but also to encourage, through imposition of liability, responsible use of automobiles.

Thus, there is a conflict between the New York law and the French law, and I must determine which law a New York court would apply.

### 2. *New York Choice of Law*

■ Traditionally, choice-of-law conflicts in tort actions have been resolved by applying the law of the place of the wrong. With *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), however, New York courts began to apply "the law of the jurisdiction which, because of its relationship or contact with the occur-

rence or the parties, has the greatest concern with the specific issue raised in the litigation." 12 N.Y.2d at 482, 240 N.Y.S.2d at 749, 191 N.E.2d at 283.

■ In *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985), the Court of Appeals summarized the post-*Babcock* cases:

Interest analysis became the relevant analytical approach to choice of law in tort actions in New York. "[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and * * * the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict" (*Miller v. Miller*) [22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968)]).... Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort (citations omitted).

65 N.Y.2d at 197, 491 N.Y.S.2d at 95, 480 N.E.2d at 683. *Schultz* points out that "[t]hese decisions also establish that the relative interests of the domicile and locus jurisdictions in having their laws apply will depend on the particular tort issue in conflict in the case." *Id.*

The issue of which law governs liability must be determined separately for each defendant, since the competing interests involved may differ. *See Schultz, supra.*

### A. *The Law Applicable to Renault France*

Plaintiff argues that Renault France's liability should be determined under New York law. Plaintiff contends that because Renault rents vehicles in New York or solicits business within New York State, the public policy of the State reflected in Section 388 should be honored, and Renault should not be permitted to evade liability. Plaintiff also notes that the public policy of France is to ensure that injured persons are financially protected by insurance. French law permits a direct action by the injured party against the insurer. From this, plaintiff concludes "[s]ince plaintiff

cannot sue the French insurance company here in New York as there is no jurisdiction over that entity, the only means by which the French public policy can be accomplished by this court is to apply the New York statute" (Plaintiff's memo at 29).

Under New York choice of law principles, I find that the liability of Renault France is governed by French law. In *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), the Court of Appeals adopted three rules for conflicts-of-law situations involving guest statutes. These rules remain applicable today. *Schultz v. Boy Scouts of America, supra,* 65 N.Y.2d 195, 491 N.Y.S.2d 90, 480 N.E.2d 679. The second rule is most applicable to the choice of law problem here:

When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

31 N.Y.2d at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 457. In this instance, Renault France is not even the driver of the car so there is less reason to apply New York law.

■ To impose liability on a French company under a New York state statute, which on its face applies to an "owner of a vehicle used or operated" in New York for an automobile accident occurring in France, involving an automobile insured by a French insurance company, and for conduct for which there is no liability under French law, would be an improper intrusion of New York law into the affairs of another jurisdiction. *See Belisario v. Manhattan Motor Rental, Inc.,* 48 A.D.2d 477, 370 N.Y.S.2d 574 (1st Dep't 1975) (resident of New York injured while working in New Jersey by a tractor trailer owned by a New Jersey corporation and driven by a New Jersey resident; the court held it was not an "in transit" case where the plaintiff's presence in New Jersey was fortuitous: "in the circumstances it would be sheer impertinence to invoke New York law.")

Most of the cases which extend the application of New York traffic laws to accidents occurring outside New York's borders are cases in which the location of the accident was entirely fortuitous. *See White v. Smith,* 398 F.Supp. 130 (D.N.J. 1975) (Section 388 applied to accident in New Jersey); *Cunningham v. McNair,* 48 A.D.2d 546, 370 N.Y.S.2d 577 (1st Dep't 1975) (Section 388 applied to accident in Maryland); *Farber v. Smolak,* 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967) (New York law applicable to accident in North Carolina); *see also Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (Ontario guest statute not applicable where fact that accident occurred in Ontario was entirely fortuitous).

In this case, the site of the accident is not fortuitous. Plaintiff arranged to rent a car with delivery in France for the express purpose of travelling around in France. None of the parties contemplated that the car would ever be "used or operated" in New York. Therefore, these automobile accident cases extending New York law to accidents "in transit" beyond New York's borders are not persuasive.

After oral argument of this motion, plaintiff submitted a recent decision of the Second Department, *Scharfman v. Nat'l Jewish Hospital and Research Center,* 122 A.D.2d 939, 506 N.Y.S.2d 90 (2d Dep't 1986). In *Scharfman,* the court refused to apply a Colorado statute which immunized a hospital for the negligence of its employees in a medical malpractice action to recover for damages which plaintiff sustained allegedly as a result of improper treatment at the defendant hospital in Denver, Colorado. Plaintiff, a resident of New York, was an infant who suffered permanent brain damage allegedly from his treatment with experimental drugs. The court found that:

the plaintiff's New York residency and the defendant's activities conducted from a New York office which screens potential patients, constitute significant contacts, and that New York has a significant interest in protecting its residents from Colorado's hospital quasi-immunity law which would bar recovery.

*Id.* 506 N.Y.S.2d at 92.

*Scharfman* is also distinguishable from the present case. First, plaintiff is not completely barred from recovery by the application of French law. Plaintiff is entitled to insurance proceeds from the Le Secours policy taken out by Renault France. While plaintiff's attorney intimated at oral argument that the insurer intended to deny coverage, it was not even established that plaintiff has, in fact, applied for the proceeds of the policy. Moreover, French law provides plaintiff with a direct cause of action against the insurer. While it would be a great inconvenience for plaintiff to pursue this litigation in France, plaintiff is not barred from a remedy. Second, I am not faced with an "anachronistic" statute of France. Liability based on custody rather than on ownership is a concept that pervades all of French tort law. Unlike the immunity statute in *Scharfman*, Article 1384 of the Civil Code is not a statute with limited application.

For all of these reasons, under New York choice of law rules, Renault France's liability should be governed by French law. Because French law imposes vicarious liability on an automobile owner only in cases in which the owner is in the automobile at the time of the accident or in which the driver is an agent or employee of the owner, on the undisputed facts of this case, Renault France is entitled to summary judgment.

B. *The Law Applicable to Renault U.S.A.*

Plaintiff also seeks to hold Renault U.S.A. liable under New York's vicarious liability law. Although the analysis is slightly different with regard to Renault U.S.A., because it is a New York corpora-

tion, the outcome is the same. To apply Section 388 to an automobile accident in France involving an automobile that was never registered or insured in New York or intended for use in New York, would be an improper extension of New York law.

Plaintiff seeks to hold Renault U.S.A. liable as the alleged owner of the automobile. She attaches as an exhibit to her moving papers, documents from Foremost which indicate that the arrangement was for the lease of a Renault rather than a sale-repurchase. Plaintiff alleges in her complaint:

> Sixteenth: upon information and belief, that at all the times hereinafter mentioned, the defendant, Renault U.S.A., Inc., was the owner of a certain motor vehicle bearing license registration number 902 TTB92.

In paragraph 17, plaintiff makes the identical allegation as to Renault S.V.S.E. Plaintiff's theory of Renault U.S.A.'s ownership is by no means clear and she has not submitted any documentary evidence which shows that Renault U.S.A. was the owner of the car. Nor does the complaint allege any further facts that establish Renault U.S.A.'s ownership of the vehicle.

Plaintiff argues that Renault U.S.A. and Renault France are, in reality, the same entity and that ownership of the vehicle by Renault U.S.A. was effected through internal accounting procedures between Renault France and Renault U.S.A.

Even assuming that Renault U.S.A. is the owner of the automobile, Section 388 is not applicable. On its face, Section 388 applies to "[e]very owner of a vehicle used or operated *in this state* ..." (emphasis added). Although plaintiff is correct that New York courts have applied Section 388 to accidents occurring beyond New York's borders, in almost all of these cases, the site of the accident was entirely fortuitous.

*Johnson v. Hertz,* 315 F.Supp. 302 (S.D. N.Y.1970), discussed *supra* at 1061, is relevant with regard to this issue. In *Johnson,* the court traced the relationship of Section 388 to the New York automobile

insurance laws. Section 388(4) provides, in pertinent part, that "policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section." Recognizing that the purpose of the insurance laws is to protect those who may be injured as a result of the activities of New York vehicle registrants, the court stated:

> The express yoking of section 388 to the insurance laws makes it clear that imputed owner liability is part of the general scheme of the insurance laws and therefore must share its stated ends of protecting the innocent victims of tortfeasors. New York has an interest in having its law applied on this issue so that *those regulated by its auto insurance policies* will be required to fulfill the ends at which those policies were aimed.

*Id.* at 304–305 (emphasis added).

██ ` Plaintiff urges this court to impose on Renault U.S.A. the obligation to procure insurance coverage, to the extent required by New York statute, for vehicles having no connection with New York State, solely because the vehicle is allegedly owned by a New York corporation, and regardless of whether it registers, owns or operates vehicles within New York State.

██ I must determine both jurisdictions' interest in applying their own law. France's interest in applying its law is the same with regard to Renault U.S.A., as it is with Renault France, to the extent that the policy behind Article 1384 is to encourage responsible operation and caution in the custodian's use of an automobile. France, therefore, has an interest in applying its law. New York's interest in seeing its law apply in this case is less clear. New York's only significant contact with this particular accident is that the victim is a New York resident. The fact that Renault U.S.A., the alleged owner of the vehicle, is a New York corporation cannot have the significance

that it does in many of the cases which plaintiff cites, because in this case, Renault U.S.A. is not the vehicle registrant. New York's stated interests are to protect accident victims *and* to ensure that New York vehicle registrants act responsibly with regard to vehicles they own and operate in New York and elsewhere. To the extent that New York would like to protect all New York accident victims, New York has an interest in applying its law.

The majority of the decisions which have applied New York law to accidents occurring outside New York involved automobiles that were registered and insured in New York. *See, e.g., Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); *Farber v. Smolak,* 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967); *Tooker v. Lopez,* 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *White v. Smith,* 398 F.Supp. 130 (D.N.J. 1975); *Johnson v. Hertz,* 315 F.Supp. 302 (S.D.N.Y.1970). In addition, as previously noted, many of these decisions have applied New York law to accidents outside New York because the location of the accident was fortuitous, and no other state had as significant an interest as New York. For example, in support of its decision to apply New York law in *Babcock v. Jackson, supra,* the Court of Appeals explained that Ontario had "no conceivable interest in denying a remedy to a New York guest against his New York host" simply because the place of the accident was in Ontario. 12 N.Y.2d at 482, 240 N.Y.S.2d at 750, 191 N.E.2d at 284.

Only *Cunningham v. McNair,* 48 A.D.2d 546, 370 N.Y.S.2d 577 (1st Dep't 1975) lends support to plaintiff's position on the applicability of New York law. In that case, the court stressed the Legislature's intention to enlarge the vehicle owner's vicarious liability and held Avis-Rent-A-Car ("Avis") liable for an accident in Maryland caused by a vehicle owned by Avis, registered in Virginia and leased in Maryland to a Virginia resident. In *Cunningham,*

however, a divided court found that no other state had an interest as great as New York's in seeing its law apply. It also relied on the fact that Avis was a nation-wide car rental agency that maintained fleets in nearly every state and that, under those circumstances, Avis' place of incorporation or where the car was rented was of little significance. Moreover, *Cunningham* has been criticized as such a far-reaching application of New York law that it is "presumably a violation of due process." *See* Herzog, *Conflict of Laws,* 27 Syracuse L.Rev. 17, 30 (1976), and the discussion in *Klippel v. U-Haul Co. of Northeastern Michigan,* 759 F.2d 1176, 1181 (4th Cir.1985).

New York automobile insurance laws do not impose such far-reaching coverage even on New York vehicle registrants. Section 311(4)(a) of the New York Vehicle and Traffic Law provides that a car owner's insurance coverage must extend to any claim arising from an accident "within the state of New York, or elsewhere in the United States in North America or the Dominion of Canada ..."

■ While New York has an interest in protecting innocent victims of automobile accidents, its laws should not be interpreted to provide protection in addition to what the law of France provides, for an injury which occurred in a vehicle having no connection with New York, *cf. Klippel v. U-Haul Co. of Northeastern Michigan, supra,* at 1183.

### Conclusion

Because I find that French law governs the liability of both Renault S.V.S.E. and Renault U.S.A., and that under French law, neither would be liable even if it owned the automobile and had merely leased it to plaintiff, defendants' motions for summary judgment are granted and the complaint is dismissed as against Renault S.V.S.E. and Renault U.S.A.

SO ORDERED.