William BUGLIOLI

v.

**ENTERPRISE RENT–A–CAR and Frank R. Reidinger.**

No. 91 C 3983.

United States District Court, E.D. New York.

Jan. 20, 1993.

Harry H. Lipsig & Partners (Alan M. Shapey, of counsel), New York City, for plaintiff.

Quirk and Bakalor, P.C. (Thomas E. Tookey, of counsel), New York City, for defendant Enterprise Rent–A–Car.

Conway, Farrell, Curtin & Kelly, P.C., New York City (Jonathan Uejio, of counsel), for defendant Reidinger.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff William Buglioli, a New Jersey citizen, brought this diversity action to recover for injuries he sustained while driving a BMW automobile in a high-speed "cat and mouse" automobile chase in New Jersey. Defendant Enterprise Rent-a-Car Company ("Enterprise"), a Delaware corporation, is located in St. Louis, Missouri. Defendant Frank R. Reidinger is a citizen of New York.

Buglioli moves for partial summary judgment with respect to defendants' liability. He proposes to litigate the amount of damages at a later time.

Enterprise cross-moves for summary judgment contending that it was not the actual or constructive owner of the rental vehicle driven by Reidinger and that even if it was the owner, it was not vicariously liable under New Jersey law.

## I

The largely undisputed facts may be briefly summarized.

Reidinger rented a Toyota Corolla from a "Enterprise Rent-a-Car" office located in Staten Island, New York in January of 1991. On March 1, 1991 Buglioli, his passenger and Reidinger and his two passengers were drinking at a bar named "Scoundrels" in Linden, New Jersey. Some sort of altercation occurred between the Buglioli and Reidinger passengers. Soon after driving away from the Scoundrels parking lot, Buglioli, Reidinger and a third car spontaneously initiated a high-speed automobile chase, described by witnesses as a game of "cat and mouse," across two miles of New Jersey roadway. According to one witness (but not another), the third car veered toward Reidinger who veered into Buglioli's lane. Buglioli lost control of his car and struck two telephone poles. As a result, according to his physician, he suffered severe head injury and brain damage, his speech is substantially unintelligible, and he has no recollection of the accident.

On December 16, 1991, Reidinger voluntarily pleaded guilty to two counts of aggravated assault by automobile, fourth degree offenses, before the Superior Court of New Jersey. He admitted in open court that by driving in a reckless manner, he caused serious bodily injury to Buglioli. He further explained that after consuming alcohol and while speeding, he swerved toward Buglioli's automobile, causing Buglioli "to go off the road and into the post."

Reidinger was informed at the time of his plea that he could receive a sentence of up to three years in prison and a fine of up to $15,000. On March 27, 1992, he was placed on probation for a period of three years.

## II

Buglioli moves for summary judgment on the issue of Enterprises's liability as constructive owner of the rented Toyota driven by Reidinger. Enterprise cross-moves for summary judgment contending, first, that it was not the actual or constructive owner of the Toyota rented by Reidinger and, second, that even if it was the owner, the court should deny vicarious liability under New Jersey law.

## A

Assuming that Enterprise (or its corporate parent which could be joined in this action) constructively owned the Toyota rented to Reidinger, the court must first determine whether to apply New Jersey or New York law to the question of the owner's liability.

Under New Jersey law, the owner of a vehicle, without more, is not liable for the negligence of a driver of the vehicle. *White v. Smith*, 398 F.Supp. 130 (D.N.J. 1975). To recover damages, plaintiff must establish (1) an agency relationship between the owner and the driver (such as employer/agent), or (2) negligence by the owner in renting or loaning the vehicle to a reckless, incompetent or irresponsible bailee. *Id.* "Thus," as plaintiff concedes, "an owner in the business of leasing automobiles may not be held liable for the bailee's negligence absent a showing of agency or negligent choice of bailee." *See also Noreiga v. Lever Bros. Co.*, 671 F.Supp. 991, 995 (S.D.N.Y.1987) (applying New Jersey law); *Schimek v. Gibb Truck Rental Agency*, 69 N.J.Super. 590, 592–93, 174 A.2d 641 (App.Div.1961); *Zuppa v. Hertz Corp.*, 111 N.J.Super. 419, 421–22, 268 A.2d 364 (Essex County Ct.1970). *Cf. Kauffman v. Gullace*, 252 N.J.Super. 467, 600 A.2d 143 (App.Div.1991).

Under section 388 of the New York Vehicle and Traffic law,

(1) Every owner of a vehicle used or operated in this state shall be liable and

responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

Because the laws of New Jersey and New York are in sharp conflict regarding the circumstances in which an automobile owner is liable for the negligence of a driver, this court must follow the conflict of laws rules of New York, the state in which this court sits. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ The New York Court of Appeals has developed rules for resolving conflicts in tort actions arising from automobile accidents without the state. When New York law conflicts with a foreign state's law regarding the appropriate standards of conduct, such as the rules of the road, the law of the place of the tort "will usually have a predominant, if not exclusive, concern." *Babcock v. Jackson*, 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

■ But where the conflicting law relates to the manner in which losses are to be distributed and a New York citizen has suffered a loss, New York courts will apply its own loss distribution rules. For example, in *Babcock*, the New York Court of Appeals applied the New York guest statute requiring a negligent driver to compensate his passenger (a New York domiciliary) for injuries sustained in an accident without the state. The court found that New York had an important interest in protecting its own citizens from unfair or anachronistic statutes of foreign states. *See Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 199, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985).

Where, however, a non-domiciliary is injured in an automobile accident without the state, the court will apply the loss-distribution rules of the place of the tort. In *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), for example, the Court of Appeals applied a Canadian guest statute in an action arising from an automobile accident in Ontario, Canada brought by a Canadian. The *Neumeier* court found that New York had no interest in protecting a foreign domiciliary injured in a foreign land. Moreover, the court observed that "application of New York law would result in the exposure of this State's domiciliaries to a greater liability than that imposed upon resident users of Ontario's highways." *See also Schultz*, 65 N.Y.2d at 201, 491 N.Y.S.2d 90, 480 N.E.2d 679 (decided in 1985 and applying *Neumeier* rules outside guest-host context).

■ Here, a New Jersey plaintiff was injured by an automobile rented in New York and owned by a corporation doing business in New York. Applying principles enunciated in *Neumeier* and affirmed in *Schultz*, a New York court would apply New Jersey law to the issue of an automobile owner's vicarious liability. New York has no interest in permitting a New Jersey plaintiff to impose vicarious liability on the New York owner of an automobile involved in an accident in New Jersey simply because the owner is a New York domiciliary.

Plaintiff cites several cases in which New York or New Jersey courts have applied section 388 of the New York Vehicle and Traffic Law when drivers of vehicles owned by New Yorker domiciliaries cased accidents without the state. *E.g., Van Dyke v. Bolves*, 107 N.J.Super. 338, 258, 258 A.2d 372 (App.Div.1969); *Maffatone v. Woodson*, 99 N.J.Super. 559, 240 A.2d 693 (App.Div.1968); *Farber v. Smolak*, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967). But in each of these cases, both the plaintiffs and the defendant-owners were domiciliaries of New York. Under principles enunciated in *Neumeier* and affirmed in *Schultz*, New York had a strong interest in applying its laws.

Plaintiff cites *White v. Smith*, 398 F.Supp. 130 (D.N.J.1975) for the proposition that the domicile of the plaintiff need not be controlling or even relevant to the choice of law analysis. There, a federal District Court, applying New Jersey choice of law rules and drawing upon New York cases, applied New York law regarding the

vicarious liability of an automobile owner where a Pennsylvania plaintiff was injured in New Jersey by a Michigan defendant while defendant drove an automobile rented from the New York office of a national rental car company.

However accurately the *White* opinion stated the then choice of law rules of New Jersey, it does not state the law of New York today. The decision mentions the landmark *Neumeier* case only once, in a footnote, where it concludes that the rules stated in that case apply solely to guest-host disputes and that the relationship of the *Neumeier* parties "centered" outside New York. 398 F.Supp. at 139 n. 9. But in *Schultz*, the New York Court of Appeals thereafter applied the *Neumeier* rules outside of a guest-host context. Moreover, that decision disfavored the multi-factored "center of gravity" analysis (which gives weight to facts such as the origin and destination of defendant's automobile trip) employed in cases such as *White*. 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679.

Plaintiff also cites *Johnson v. Hertz*, 315 F.Supp. 302 (S.D.N.Y.1970), in which the court applied section 388 in a case brought by a Massachusetts domiciliary for injuries caused in a New Jersey accident by the unknown driver of a Hertz-owned automobile rented in New York. But that case, which was decided before *Neumeier*, no longer appears to state the law of New York.

This court shall apply New Jersey law regarding the vicarious liability of the owner of the automobile driven by Reidinger.

## B

■ Buglioli submits no evidence tending to show either that Reidinger was an agent of Enterprise or that Enterprise was negligent in renting the vehicle to Reidinger. His motion was apparently based on the erroneous belief that New York law would apply to the issue of an automobile owner's liability.

With no evidence that Reidinger was an agent of Enterprise or that Enterprise was negligent, the court grants summary judg-

ment to Enterprise, dismissing all claims against it.

## III

■ Buglioli also moves for an interlocutory order granting him summary judgment on the issue of Reidinger's liability in negligence. He contends that Reidinger is collaterally estopped from denying liability due to Reidinger's guilty plea.

Insofar as the application of New York or New Jersey law leads to differing results on the issue of Reidinger's liability, this court must follow, under principles announced in *Neumeier*, the statutory and decisional law of New Jersey.

In order to establish that Reidinger is liable under the New Jersey law of negligence, Buglioli must show by a preponderance of the evidence that Reidinger breached a duty of care, directly and proximately causing his injury.

### A. *Duty of care*

Reidinger contends that he owed no duty of care to Buglioli who, together with Reidinger and a third driver, was engaged in serious criminal or illegal conduct. He cites *New Jersey Mfg. Ins. Co. v. McDermott*, 201 N.J.Super. 251, 492 A.2d 1115 (Law Div.1985), in which an insurance company won a declaratory judgment that it was not required to compensate defendant for his injuries.

There, defendant had been injured after he and an accomplice had robbed a store, escaped in a high-speed getaway, then crashed. According to the terms of the insurance policy, plaintiff insurance company was obliged to compensate defendant if defendant had a valid cause of action against any uninsured automobile driver. The court held that the defendant had no cause of action against his accomplice, the uninsured driver of the getaway car, because the accomplice owed no duty to an accomplice to drive a getaway car with reasonable care.

Whatever import the *McDermott* decision may have in preventing fleeing thieves from exacting insurance compensation, the

case has no apparent application in negligence cases, as here, in which plaintiff and defendant recklessly or intentionally assaulted one another. In such cases, New Jersey courts have held that where plaintiff and defendant both engaged in aggravated assault, their relative liability will be resolved by application of the New Jersey comparative negligence statute. *See, e.g., Bonpua v. Fagan,* 253 N.J.Super. 475, 602 A.2d 287 (1992). The court knows of no New Jersey case finding no duty of care between such parties.

### B. *Breach of duty*

New Jersey defines "negligence," referring to a breach of a duty of care, "as a failure to exercise in given circumstances that degree of care for the safety of others which a reasonably prudent person would exercise under the same or similar circumstances." *Eaton v. Eaton,* 119 N.J. 628, 635, 575 A.2d 858 (1990). An automobile driver "is under the duty of exercising for the safety of others that degree of care, precaution and vigilance in the operation of the car which a reasonably prudent person would exercise under similar circumstances." *Id.*

Buglioli says that Reidinger's guilty plea to two counts of aggravated assault with an automobile is conclusive proof of negligence. Plainly this evidence has great weight.

In *Eaton v. Eaton,* the New Jersey Supreme Court analyzed the significance of a prior plea of guilty to a traffic offense in a subsequent negligence action. There, a daughter had driven an automobile carelessly, causing the death of her mother who was seated next to her. The daughter pleaded guilty to a violation of the New Jersey careless-driving statute which provided:

> A person who drives a vehicle on a highway carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving.

N.J.Stat. § 39:4–97 *cited in Eaton,* 119 N.J. at 642, 575 A.2d 858.

The father then brought a negligence action against the daughter, introducing her guilty plea as evidence. In reviewing the trial judge's charge to the jury, the *Eaton* court held that where a statute specifically incorporates a common-law negligence standard of care, a jury must find the defendant negligent if it finds that the defendant violated the careless-driving statute. It reasoned that a jury could not consistently find defendant had violated the careless-driving statute, yet find defendant nonnegligent.

The *Eaton* court further held that the trial court properly admitted evidence of the daughter's guilty plea. But the court pointed out that a party who enters a guilty plea is not estopped from contesting the admitted fact, explaining that:

> The plea is merely an admission of a party. As with other admissions, the party who has entered the plea may rebut or otherwise explain the circumstances surrounding the admission. Thus, a party who has pled guilty may try to persuade the jury that the plea was merely a compromise, or less a reflection of guilt than a balancing of the costs of contesting the charge with the burden of the conviction.

*Id.* at 644, 575 A.2d 858 (citations omitted). *Cf.* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice and Procedure,* § 4474 at 759 (1981) ("[c]onvictions based upon pleas rather than adjudication present sharply contrasting preclusion results").

The application of *Eaton* here is plain. Reidinger pleaded guilty to two counts of assault by automobile. The relevant statute provides:

> A person is guilty of assault by auto when the person drives a vehicle recklessly and causes either serious bodily injury or bodily injury to another. Assault by auto is a crime of the fourth degree if serious bodily injury results and is a disorderly persons offense if bodily injury results.

N.J.Stat. § 2C:12–1(c).

The New Jersey assault-by-automobile statute clearly incorporates a common-law

standard of care in that a factfinder could not consistently find that Reidinger was guilty of aggravated assault by automobile and that Reidinger had driven his car with "the degree of care ... a reasonably prudent person would exercise under similar circumstances." Thus, if Reidinger violated this statute, he acted negligently.

Reidinger could have, but did not, submit any evidence that he entered a guilty plea as a "compromise," or that he pleaded guilty after "a balancing of the costs of contesting the charge with the burden of the conviction." Given his failure to submit evidence to contradict the plea, this court finds, by application of New Jersey law, that Reidinger was negligent.

Even if the court were not to rely on the *Eaton* decision, the court would find that Reidinger's conduct was, at a minimum, negligent. He admitted in open court he acted recklessly. He offers no evidence now that he exercised reasonable care at the time of the accident. Even his attorney, in his affidavit, characterized Reidinger's conduct as reckless.

## C. *Causation and injury*

Buglioli has submitted uncontradicted evidence that Reidinger directly and proximately caused Buglioli's injury. Reidinger admitted in open court that as a result of his swerving toward Buglioli, Buglioli drove "off the road and into the post." Buglioli also submitted his physician's affidavit in which she attests to his substantial bodily injuries. The court finds that these injuries were foreseeably and proximately caused by Reidinger's negligent and reckless conduct.

## D. *Defenses*

■ Reidinger raises two defenses. He contends, first, that under New Jersey law a plaintiff assumes the risk of voluntarily participating in a sporting activities, citing *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959) and *Pona v. Blvd. Arena*, 35 N.J.Super. 148, 113 A.2d 529 (App.Div.1955), and that Buglioli voluntarily participated in a "cat and mouse game." These cases provide no defense.

First, the court knows of no decision after New Jersey adopted its comparative negligence statute interposing "assumption of risk" as a complete defense in a negligence action. To the contrary, a recent case arising from a contact sport accident formulated an appropriate rule by adjusting the standard of care, not by finding "assumption of risk." *See, e.g., Crawn v. Campo*, 257 N.J.Super. 374, 608 A.2d 465 (1992) (holding, in actions arising from a contact sport accident, plaintiff must show "defendant acted in reckless disregard of the safety of others or intentionally").

Second, the court finds no New Jersey case applying a contact sport standard of care in a case involving aggravated assault, even when that assault had a game-like quality.

Last, even if the contact sport standard of care adopted by the *Crawn* court applies here, Buglioli has provided uncontradicted evidence that Reidinger "acted in reckless disregard" of Buglioli's safety.

Reidinger contends, second, that he is entitled to additional discovery to determine whether Buglioli's comparative negligence is greater than fifty percent, thereby barring Buglioli from recovery under New Jersey's comparative negligence statute. This argument assumes, incorrectly, that the amount of damages, if any, Buglioli may recover is at issue in this motion.

The court finds no genuine issue of material fact with respect to Reidinger's liability to Buglioli. The court grants summary judgment to Buglioli.

So ordered.